UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 05-386 (ESH) |
| | : | |
| v. | : | The Honorable Ellen Segal Huvelle |
| | : | |
| KIRK CARTER | : | Status: 2/26/07 |

GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL FOR DEFENSE

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, hereby moves this Honorable Court to disqualify Charles Daum, Esq, counsel for

the defendant, and replace him with counsel unencumbered by a conflict of interest. In support

of this motion, the government relies on the following points and authorities, and upon any

others which may be raised at a hearing on this motion.

FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2006, as the government prepared for trial in United States of America v.

Antoine Jones, et. al, 05-386 (ESH) – in which Kirk Carter was a defendant – the government

produced the Jencks material for its anticipated trial witnesses, pursuant to court order. Among

the materials produced were the plea agreement, grand jury transcript, and related documents for

one such witness, Kevin Ray. Approximately two weeks later, on October 16, 2006, jury

selection commenced for the defendant and his four co-defendants. During one of the many

unanticipated breaks in jury selection, the defendant's attorney, Charles Daum, Esq., asked

government counsel whether the witness Kevin Ray was in fact a Kevin Ray he had represented

in the past. After some discussion, the parties came to the conclusion that Mr. Daum had,

indeed, represented this particular Kevin Ray in the past, thus creating an unforeseen conflict of

interest for Mr. Daum. The parties brought this issue to the Court's attention, who questioned

both parties at length, and then granted the government's request to consider over the evening

recess what options were available in this unusual circumstance – essentially severing Mr.

Carter's case, or making the decision on the spot not to call Kevin Ray as a witness at trial.

Having considered the situation in the limited time practicable, the next day, October 27,

2006, the government moved to sever Mr. Carter's case from that of his co-defendants.  The case

proceeded to trial against the remaining four defendants, and Mr. Carter's case was set for trial

on February 26, 2007.

After nearly two months of evidence, the jury acquitted three of the four co-defendants

and hung on the charges against the lead defendant, Antoine Jones.  The Court held a joint status

hearing on February 2, 2007, for Messrs. Carter and Jones, along with two additional defendants

– Lawrence Maynard and Javier Gonzalez-Ruan – based on the government's announced

decision to seek a superseding indictment encompassing these four alleged co-conspirators.[1]  At

that hearing, the issue of Mr. Daum's conflict of interest was again discussed, and the Court set a

briefing schedule to address the available options, including severance and disqualification of

Mr. Daum.

Since the February 2, 2007, hearing, the government has begun to outline its case in

preparation for the superseding indictment and retrial, and to consider the various ways to prove

the conspiracy against these defendants in particular.  During the course of those discussions, it

has become clear that Kevin Ray is an important witness, not only against Antoine Jones and

---

[1]    Lawrence Maynard was one of the defendants indicted along with Jones and Carter.  He pleaded guilty to one count of narcotics conspiracy in June, 2006, but later moved to withdraw his guilty plea, which the Court granted at the February 2, 2007, hearing.  Javier Gonzalez-Ruan was indicted in a separate, related sealed indictment, and was arrested crossing the border from Mexico into Texas shortly before the October, 2006, trial commenced.

Lawrence Maynard, but also against Kirk Carter.  Briefly, Mr. Ray will testify that when he was a

kilogram cocaine customer of Jones, he frequently would meet with Jones at Sam's Carwash in

Temple Hills, MD, to exchange money and cocaine.  He will further testify that he provided this

information to the government in the fall of 2004, nearly one year before the wire interceptions

began on Jones's cellular telephone.  He will finally testify that he does not know Kirk Carter.

This proof becomes powerful because law enforcement agents will testify that (1) they had not

heard of Kirk Carter until they picked him up on the wire, speaking to Mr. Jones about such

things as meeting at Sam's Carwash, and using coded language identical to numerous other

suspected customers – eg, "tickets" to represent wholesale quantities of cocaine; and (2) they

surveilled one such meeting between Jones and Carter at Sam's Carwash during which time

neither man washed or vacuumed his car.  This evidence taken together is powerful support for

the government's argument that the calls in which Carter and Jones are discussing "ticket" sales

and meeting at Sam's Carwash, among other places, are in fact discussions of drug activity – and

thus direct proof of the charged conspiracy.

ARGUMENT

While it is without question that a criminal defendant has a constitutional right to the

representation of counsel (*see, e.g.*, United States v. Morrison, 449 U.S. 361, 364 (1981)), he

does not have the absolute right to counsel of his first choice.  United States v. Wheat, 486 U.S.

153, 159 (1988) ("while the right to select and be represented by one's preferred attorney is

comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an

effective advocate for each criminal defendant rather than to ensure that a defendant will

inexorably be represented by the lawyer whom he prefers").  That right is balanced against the

3

"independent interest" of Federal courts in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 160.   Where, as here, defense counsel has a conflict of interest by virtue of his prior representation of government witness Kevin Ray, this Court should disqualify him, absent waivers by both Mr. Carter and Mr. Ray.

      I.      <u>The defendant's refusal to waive the conflict of interest leaves the Court no choice but to disqualify Mr. Daum.</u>

Before the Court can begin to parse the competing interests of Mr. Carter, Mr. Ray, and the Court's own interest in ensuring ethical proceedings, Mr. Carter must first waive Mr. Daum's conflict of interest.  Exhaustive review of the caselaw has not revealed a single case in which a court of any jurisdiction permitted continued representation absent such a waiver.  *See generally* Phelps, William G., <u>Grounds for Disqualification of Criminal Defendant's Chosen and Preferred Attorney in Federal Prosecution</u>, 127 ALR Fed. 67 (2007) (collecting cases), and Schwartz, A.L., <u>Propriety and Prejudicial Effect of Counsel's Representing Defendant in Criminal Case Notwithstanding Counsel's Representation or Former Representation of Prosecution Witness</u>, 27 ALR3d 1431 (2007) (collecting cases); *cf.* <u>United States v. Armedo-Sarmiento</u>, 524 F.2d 591, 592 (2d Cir. 1975) ("of course, a defense counsel's conflict of interests may impair his effectiveness in assisting his client . . . . The client however may waive his Sixth Amendment rights to effective assistance of counsel and to confront witnesses"; reversing District Court's decision to disqualify because the court did not give the defendant an opportunity to so waive). Because he refuses to do so, the inquiry must end here, and the Court should disqualify Mr.

Daum from further representation of Mr. Carter.[2]

Should the Court affirm the defendant's refusal to waive the conflict, the practical result would be that the government would be forced to refrain from calling a significant witness against the defendant.  This is an absurd result - unfair to both the government and society's interest in fair trials - that the Constitution does not contemplate.

II.    Even if Mr. Carter waives the conflict of interest, the Court should conduct a further inquiry to determine whether the interests of justice are served by Mr. Daum's continued representation, and if so, what additional measures are required to protect the interests of Mr. Ray.

Assuming, *arguendo*, that Mr. Carter chooses to waive the conflict of interest, the Court's inquiry should not end there.  *See* Wheat, *supra*, 486 U.S. at 161-162 ("nor does a waiver by the defendant necessarily solve the problem;" "there can be no doubt that [a District Court] may decline a proffer of waiver").  In Wheat, the Supreme Court noted that there is more to the equation than simply the whim of the defendant on trial.  Rather, the Court should consider the impact of this dual-representation on the administration of justice in its courtroom.

> When a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant.  Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness in [her] own court and the subtle problems implicating the defendant's comprehension of the waiver.

---

[2]    Indeed, in numerous cases, courts have disqualified retained defense counsel even after a defendant's waiver of the conflict of interest.  *See, e.g.,* United States v. O'Malley, 786 F.2d 786 (7th Cir. 1986).  In still more cases, courts have disqualified retained defense counsel even after a waiver of the conflict by **both** the defendant on trial **and** the witness who intends to testify.  United States v. Ross, 33 F.3d 1507 (11th Cir. 1994).

Id. at 162, *quoting* United States v. Dolan, 570 F.2d 1177, 1184 (3rd Cir. 1978) (internal quotations omitted).

Implicit in this discussion is the Court's concern that the defense counsel at issue will have divided loyalties: (1) to the witness he had previously represented, insofar as he would be duty-bound to protect information he learned from that witness in the context of the attorney-client relationship; and (2) to the defendant on trial, insofar as he might not bring his full effort to bear on the cross-examination of his former client, raising issues of the constitutional right to effective counsel. *See* United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986). This conflict is especially acute where, as here, the witness, Mr. Ray, refuses to waive the conflict. *Cf.* United States v. Nynex Corp., 788 F.Supp. 16 (D.D.C. 1992) (where government intended to call two employees of Nynex, who had previously been represented by attorney at issue, but these employees submitted affidavits agreeing to be questioned at Nynex's trial about anything they told the attorney in confidence, the government's motion to disqualify defense counsel was denied).

In determining whether the interests of justice - and thus the Court's interests - are served by Mr. Daum's continued representation of Mr. Carter, in the event that Mr. Carter chooses to waive the conflict, the Court should evaluate "the interests of the defendant, the government, the witness, and the public" in view of the particular circumstances of this case. United States v. O'Malley, *supra* n. 2, 786 F.2d at 790 (court's disqualification of defense counsel upheld where witness objected to the use of any information gleaned in confidence, and where defense counsel had represented witness in lengthy, complex proceeding related to the case at hand).

Here, the issue of greatest concern to the government is the ability of the Court to protect

the confidences of Mr. Ray.  Some courts have implemented a process in which defense counsel

is constrained to cross-examine the witness based solely on information available in the public

record, *e.g.*, prior criminal history.  *See* United States v.Cunningham, 672 F.2d 1064, 1071 (2d

Cir. 1982).  Should the Court decline to disqualify Mr. Daum, the government requests that, at

the very least, similar measures be employed in this case.

The Court should also consider the competing interests of the government - and society -

in a level playing field.  United States v. Ostrer, 597 F.2d 223, 339-40 (2d Cir. 1979):

> Disqualification motions should be granted where the attorney in
> question is potentially in a position to use privileged information
> obtained during prior representation of [the witness]. . .
> Disqualification of counsel in such cases is rooted in notions of
> fundamental fairness; allowing an attorney to represent a client in a
> situation where he may use information obtained in the course of
> former representation of the client's adversary gives the client an
> "unfair advantage."

(Citation omitted).

Finally, as noted above, Wheat counsels the Court to consider its own interest in

"ensuring that criminal trials are conducted within the ethical standards of the profession and that

legal proceedings appear fair to all who observe them."  Wheat, *supra*, 486 U.S. at 160 (where in

a "complex drug distribution scheme," counsel wished to represent the defendant, along with two

related defendants, including a government witness who had "turned state's evidence," Court

upheld trial court's decision to disqualify counsel).

WHEREFORE, the United States respectfully requests that its motion to disqualify

counsel be GRANTED.

Respectfully submitted,

Jeffrey L. Taylor
United States Attorney

By: _____
Rachel Carlson Lieber
Assistant United States Attorney
555 4th Street, NW, Room 4820
Washington, DC 20530
(202) 353-8055
Rachel.lieber@usdoj.gov